**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **MARK WALTERS** | § | |
| | § | |
| **V.** | § | **A-12-CA-1072-ML** |
| | § | |
| **BRAD LIVINGSTON, THOMAS** | § | |
| **PRASIFKA, and JONI WHITE** | § | |

## OPINION AND ORDER

The above-referenced case was transferred to the undersigned Magistrate Court's docket pursuant to the parties' consent under 28 U.S.C. § 636(c).  All parties have consented to the Magistrate Court.

Before the Court are Pro Se Plaintiff's Second Amended Complaint (Document No. 63); Defendants' Motion for Summary Judgment (Document No. 73); Plaintiff's Response and Cross Motion for Summary Judgment (Document 76); Defendants' Reply and Response (Document 79); Plaintiff's Sur-Reply and Reply (Document 92); Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction and Motion to Dismiss for Failure to State a Claim (Document 96); Plaintiff's Response (Document 97); Defendants' Reply (Document 101); Plaintiff's Motion for Reconsideration to Amend Complaint and Defendants' response thereto (Documents 104, 108); and Putative Interveners' Objection and Motion for Reconsideration to Intervene and Defendants' response thereto (Documents 105, 107).

1

## I. BACKGROUND

At the time Plaintiff filed his complaint, he was confined in the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ-CID").  Plaintiff initially filed his complaint in state court against Brad Livingston.  Defendant Livingston removed the case to federal court, and Plaintiff subsequently amended his complaint to add Defendants Thomas Prasifka and Joni White.

Plaintiff was convicted of retaliation, a third degree felony, and was sentenced to a term of imprisonment of five years.  According to Plaintiff, he was processed into TDCJ on October 2, 2009, and has been assigned to several different prison units.

On January 26, 2012, while confined in the Stevenson Unit, Plaintiff asserts he officially changed his faith preference to Native American.  Plaintiff alleges this change was made on TDCJ's "SSNO screen" as well as his "travel card."  According to Plaintiff, the Stevenson Unit is one of eight units designated to house inmates who list Native American as their chosen religion.

Plaintiff alleges on April 2, 2012, he was informed he was being transferred to the Billy Moore Unit, a non-Native American designated unit.  At the time of the alleged improper transfer, Plaintiff asserts he was a G/2, minimum security inmate and State Approved Trustee III, with no major disciplinary cases in over 18 months.  En route to the Billy Moore Unit, Plaintiff was temporarily housed at the Huntsville Unit.  There he was involved in an incident with an officer and was charged with an alleged fraudulent disciplinary action.[1]  As a result, Plaintiff lost 300 days of

---

[1] Plaintiff challenged his disciplinary action in a federal application for habeas corpus relief.  See Walters v. Stephens, No. A-12-CV-718-LY (W.D. Tex.).  The Court denied habeas corpus relief on November 22, 2013.  The Fifth Circuit recently denied Plaintiff's request for a certificate of appealability.  Walters v. Stephens, No. 13-51130 (5th Cir. 2014).

good time credit, his custody level was changed to G/4, and he was transferred to the Allred Unit, a non-Native American unit, as part of his disciplinary measures, on May 3, 2012.  Plaintiff subsequently requested a transfer to a Native American unit, but his request was denied.  According to Plaintiff, he was considered ineligible for a transfer pursuant to the "Religious Transfer Policy," because he had a major disciplinary conviction within the past year.

Plaintiff claims no accommodations were furnished to him at the Allred Unit as a means of exercising his faith.  Plaintiff contends Joni White, Director of Classification and Records, approved the policy that denied Plaintiff a religious transfer as a disciplinary sanction and failed to train members of the State Classification Committee to take into account religious requirements when transferring inmates.  Plaintiff further contends Brad Livingston, Director of the Texas Department of Criminal Justice, and Thomas Prasifka, Deputy Director for Support Services of TDCJ, failed to adequately supervise and train White regarding the establishment of policies, procedures and customs that would violate Plaintiff's access to religion.  Plaintiff asserts Livingston was notified of Plaintiff's alleged unlawful transfer and failed to intervene.  Plaintiff complains Defendants had the opportunity to divert Plaintiff to a Native American unit when he used the grievance system but failed to do so.  Plaintiff contends the sole purpose of the Religious Transfer Policy is to discipline inmates, and the policy unfairly punishes non-Christians and non-Muslims.  Plaintiff asserts, "[w]ith an intentional, a deliberate, and a conscious indifference to Plaintiff's free exercise of religion, due process, and equal protection, of Plaintiff, Defendant's [sic] adopted or maintained, through its final policy makers, unconstitutional policies and customs, and failed to implement constitutional and proper policies and procedures which proximately caused, or resulted in the violations of the constitutional rights of Plaintiff."

Plaintiff sues Brad Livingston, Thomas Prasifka, and Joni White. He seeks a declaration that Defendants violated his rights to free exercise of religion, equal protection, and due process under the First and Fourteenth Amendments to the United States Constitution, his rights under the Texas Constitution and his rights under the Texas Religious Freedom Restoration Act. He further seeks injunctive relief requiring TDCJ to abandon its Religious Transfer Policy that allegedly denies religious transfers based on disciplinary history. In addition, Plaintiff requests $10,000 in compensatory damages against Defendant Livingston in his official capacity for violating Plaintiff's rights under the Texas Religious Freedom Restoration Act, $25,000 against Defendants Prasifka and White, individually and severally, in their official capacities, $25,000 against Defendants Prasifka and White, individually and severally, in their personal capacities, $15,000 in punitive damages against all defendants, individually and severally, in their personal capacities, and $50,000 in nominal damages against all defendants, jointly.

## II. MOTIONS FOR SUMMARY JUDGMENT

Defendants move for summary judgment. They argue no damages are available against the defendants in their official capacities with regard to Plaintiff's federal claims.[2] They also argue no injunctive relief is available in their official capacities and they are entitled to qualified immunity with regard to Plaintiff's federal claims brought against them in their individual capacities. Specifically, they argue they lack the requisite personal involvement to be held liable under the First and Fourteenth Amendments. They contend they have only been sued due to their supervisory capacities. Alternatively, they argue Plaintiff fails to establish a First Amendment violation with

---

[2] Defendants mistakenly assume Plaintiff has raised claims under the Religious Land Use and Institutionalized Persons Act.

regard to his claim that he was denied a transfer to a designated Native American unit based on the Religious Transfer Policy.  They explain the policy of requiring offenders to have one-year clear disciplinary record for a religious transfer is reasonably related to a legitimate penological interest. Defendants also argue Plaintiff fails to establish a Fourteenth Amendment violation.  They maintain Plaintiff had no protected liberty interest to be transferred to a Native American unit, and if he had, Plaintiff had the opportunity to be heard through the completion of the "request for transfer to designated unit form."  They further maintain Plaintiff fails to allege a discriminatory intent on the part of the defendants.  Alternatively, they argue they acted objectively reasonable as (1) they had no personal involvement in housing Plaintiff at non-Native American units or denying his request for a transfer to a designated Native American unit and (2) Plaintiff was transferred to a designated Native American unit upon further review of his records approximately eight months after his transfer to the Allred Unit.

With regard to Plaintiff's state law claims, Defendants argue they are protected by sovereign immunity.  In addition, they contend Plaintiff's claim brought pursuant to the Texas Religious Freedom Restoration Act can only be maintained against the defendants in their official capacities for injunctive relief.  They conclude Plaintiff's state law claims asserting equal rights and freedom of worship under the Texas Constitution fail for the same reasons as his federal constitutional claims. With regard to Plaintiff's claim under the Searches and Seizure Clause of the Texas Constitution, they argue Plaintiff alleges no facts involving an unreasonable search or seizure.  Defendants finally argue the Court lacks jurisdiction over the state law claims, because Plaintiff fails to assert a valid federal claim.

Plaintiff responds that Defendants waived their Eleventh Amendment immunity when they removed this case from state court. In addition, Plaintiff argues he is entitled to injunctive relief. With regard to his federal constitutional claims, Plaintiff essentially reasserts his claims made in his amended complaint. Specifically, Plaintiff reasserts Defendants violated the First Amendment when he was improperly transferred off of the Stevenson Unit, which is a Native American unit, and transferred to the Allred Unit, a non-Native American unit. He repeats his rights were further violated when his request to transfer to a Native American unit from the Allred Unit was denied pursuant to the Religious Transfer Policy, because he had a recent disciplinary conviction. Plaintiff believes Defendant Livingston is an "active party to this litigation" because he is responsible for the administration and enforcement of all laws relating to the TDCJ. Plaintiff claims the Religious Transfer Policy denied him the ability to transfer to a unit where he had access to a spiritual leader, religious books, music, pipe ceremony, and other cultural items only available on a designated Native American unit. Plaintiff complains his attempt to order his own devotional items while at the Allred Unit was thwarted by unit administration and an alleged incompetent chaplain, who lost Plaintiff's order form for two months. With regard to his due process claim under the Fourteenth Amendment, Plaintiff argues he was denied his right to free exercise of religion due to a prison regulation that was not reasonably related to a legitimate penological interest. Plaintiff admits the prison's "HQ-150 process" allowed Plaintiff to be heard regarding his denial of a transfer, but claims the Allred Unit Chaplain did not follow procedures and implement the process on Plaintiff's behalf and the unit grievance investigator failed with regard to Plaintiff's "I-127" grievance form. With regard to his equal protection claim, Plaintiff argues the Religious Transfer Policy does not affect all inmates the same. Plaintiff asserts, if he were a Christian or Muslim, he would have been able

to attend religious services at the Allred Unit.  Plaintiff concludes the Religious Transfer Policy negatively affects Native Americans, creating a discriminatory action based on Plaintiff's religion.

Plaintiff denies Defendants are entitled to qualified immunity.  Specifically, Plaintiff asserts he made a personal plea to Defendant Livingston after he was denied a religious transfer, and Livingston failed to act.  To the extent Plaintiff sues Defendant Prasifka, Plaintiff argues Prasifka "turned a blind eye to a religious transfer policy."  He further argues Prasifka failed to train and supervise members of the State Classification Committee.  He similarly argues Defendant White failed to train and supervise these members and approved the Religious Transfer Policy as a disciplinary sanction.  Plaintiff argues Defendants Prasifka and White failed to enact securities to prevent the improper transfer of inmates from units where they can practice their faith.  Plaintiff claims two other inmates have also been improperly transferred.  Plaintiff believes Defendant White is a policymaker for the Classification Department and was responsible for the Religious Transfer Policy.  Plaintiff claims Defendant Prasifka, White's supervisor, failed to "quash" the policy.

With regard to Plaintiff's state law claims, Plaintiff clarifies the only defendant alleged to have violated his rights under the Texas Religious Restoration Act is Defendant Livingston.  Plaintiff explains state law requires these claims to be brought against a state officer in his official capacity. Plaintiff concludes Defendants failed to meet their burden for summary judgment.

Plaintiff has also filed a cross motion for summary.  Plaintiff makes clear, contrary to Defendants' assumptions, that he has not filed any claims pursuant to the Religious Land Use and Institutionalized Persons Act ("RLUIPA").[3]  Alternatively, he suggests he would have been entitled

---

[3]  In their Response to Plaintiff's Cross Motion for Summary Judgment, Defendants assert they are "baffled" as to why Plaintiff believes Defendants "have aggressively pushed the court to acknowledge that [he] has filed a claim under the federal Religious Land Use and Institutionalized

to monetary damages under RLUIPA because he suffered a physical injury when he was assaulted by a prison guard after he was transferred off of the Stevenson Unit.  Plaintiff suggests he should be "granted summary judgment for damages on all issues."

### III.  MOTION TO DISMISS

During the pendency of this action, Plaintiff discharged his sentenced and was released from prison.  After his release, Defendants moved to dismiss Plaintiff's amended complaint.  They assert Plaintiff completed his sentence and was released from prison on June 13, 2014.  Defendants contend Plaintiff's release from prison moots this case, because "the relief sought cannot be attained."  They argue Plaintiff's claim for monetary damages is barred by Eleventh Amendment immunity and the claim for injunctive relief was rendered moot upon Plaintiff's release from prison.  They conclude Plaintiff now lacks standing under Article III of the Constitution to assert his claims.  Without any valid federal claims Defendants argue the Court lacks jurisdiction over Plaintiff's pendent state law claims.

Plaintiff counters he suffered an injury in fact when he was transferred to a non-Native American unit and was denied access to religion.  Plaintiff further argues his injury is fairly traceable to the Religious Transfer Policy.  Plaintiff denies his release from prison moots this case and points out Defendants have overlooked his claims for monetary damages.  Plaintiff also argues Defendants' removal of his case to federal court waives Eleventh Amendment immunity.

Defendants reply that Plaintiff's § 1983 claims against the defendants in their official capacities for monetary relief are invalid because a state official sued in his official capacity for

Persons Act." They deny they identified such a claim in their Motion for Summary Judgment. Contrary to their denial, Defendants plainly argue in their Motion for Summary Judgment that Plaintiff's "section 1983 and RLUIPA claims" are barred by Eleventh Amendment immunity.

damages is not a "person" for purposes of § 1983 liability.  They also argue they are entitled to qualified immunity with regard to Plaintiff's claims brought against them in their individual capacities.  They point out vicarious liability is not actionable in a § 1983 action.

## IV.  MOTIONS TO AMEND AND INTERVENE

After Defendants filed their Motion to Dismiss, Plaintiff moved to amend his complaint. Plaintiff wished to add two plaintiffs, inmates in TDCJ, to the case.  Plaintiff recognized he is no longer incarcerated and filed his motion to amend to defeat Defendants' argument that his claims for injunctive relief are moot.  Relatedly, the two proposed plaintiffs filed a Motion to Intervene.  Both motions were denied.

Plaintiff and the Interveners now request the Court to reconsider their motions.  Plaintiff admits the act of amending is "strictly a means to present the 'opportunity to test a claim on the merit."  Plaintiff contends, by allowing the two interveners, he is "guaranteed an ability to attain injunctive relief should he win the case on the merits."

## V. ANALYSIS

A.    <u>Motions to Reconsider Motions to Amend and Intervene</u>

Plaintiff's claims relate to a specific set of facts, which have absolutely no relation to the proposed interveners' claims, if any.  Should the interveners wish to challenge the Religious Transfer Policy they may file their own lawsuits.  There, they will be responsible for their own cases and the filing fees pursuant to the Prison Litigation Reform Act.  They will also have the opportunity to demonstrate the requisite standing to pursue their claims, which have absolutely no connection to Plaintiff's claims.  Plaintiff will not be allowed to delay this case by improperly amending his complaint. Additionally, the Court notes Plaintiff is not an attorney and is not authorized to act on

9

behalf of the proposed interveners.  The Court is troubled by the apparent forgery of the interveners' names on their purported Motion to Reconsider and reminds Plaintiff that practicing law without a law license is a violation of state law.  Accordingly, the Motions to Reconsider are denied.

B.      Standard Under Rule 12(b)(1)

Defendants move to dismiss Plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(1).  Rule 12(b)(1) allows a party to assert a lack of subject-matter jurisdiction as a defense to suit. Federal district courts are courts of limited jurisdiction, and may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statute. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). "Article III, § 2, of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies,' which restricts the authority of federal courts to resolving the legal rights of litigants in actual controversies." Genesis Healthcare Corp. v. Symczyk, ––– U.S. ––––, ––––, 133 S. Ct. 1523, 1528 (2013) (internal quotation marks omitted). There must be an actual controversy-that is, the plaintiff must have a personal stake in the outcome of the action-at all times.  Id.  If at any point the plaintiff lacks such an interest, the case is moot and must be dismissed.  Id.

The burden of establishing subject-matter jurisdiction by a preponderance of the evidence rests with the party seeking to invoke it.  New Orleans & Gulf Coast Ry. Co. v. Barrois, 533 F.3d 321, 327 (5th Cir. 2008).  In evaluating a challenge to subject-matter jurisdiction, the Court is free to weigh the evidence and resolve factual disputes so that it may be satisfied jurisdiction is proper. See Montez v. Dep't of Navy, 392 F.3d 147, 149 (5th Cir. 2004).  In conducting its inquiry, the Court may consider: (1) the complaint alone; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts plus the Court's resolution of disputed facts.

Id.  The Court must take the allegations in the complaint as true and draw all inferences in the plaintiff's favor.  Saraw P'ship v. United States, 67 F.3d 567, 569 (5th Cir. 1995); Garcia v. United States, 776 F.2d 116, 117 (5th Cir. 1985).  Dismissal is warranted if the plaintiff's allegations, together with any undisputed facts, do not establish the Court has subject-matter jurisdiction.  See Saraw, 67 F.3d at 569; Hobbs v. Hawkins, 968 F.2d 471, 475 (5th Cir. 1992).

> 1.    *Plaintiff's Release from Prison*

Plaintiff raises federal claims against the defendants in their official capacities for declaratory and injunctive relief.  Plaintiff's release from prison moots his request for injunctive and declaratory relief.  See Herman v. Holiday, 238 F.3d 660 (5th Cir. 2001) (holding that an inmate's transfer from an offending institution normally "render[s] ... claims for declaratory and injunctive relief moot"); see also Gladson v. Iowa Dep't of Corrections, 551 F.3d 825 (8th Cir. 2009) (holding state prisoner's claim that prison officials violated his free exercise and RLUIPA rights was rendered moot when he was transferred to another facility and was no longer subject to the allegedly offending policy).  Plaintiff's release, however, does not render moot his request for monetary damages.  Accordingly, Defendants' Motion to Dismiss is granted with regard to Plaintiff's federal claims brought against the defendants in their official capacities for declaratory and injunctive relief.

> 2.    *Eleventh Amendment Immunity*

In addition to bringing federal claims against the defendants, Plaintiff also brings state law claims.  Ordinarily, state law cannot be the basis on which a federal court either enters an injunction or an award of monetary relief against a state.  See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 117 (1984) ("The reasoning of our recent decisions on sovereign immunity thus leads to the conclusion that a federal suit against state officials on the basis of state law contravenes the Eleventh

Amendment.").   However, as Plaintiff points out, the state officials waived their Eleventh Amendment immunity by removing this case to federal court.   See Lapides v. Bd. of Regents of Univ. Sys. of Ga., 535 U.S. 613, 624 (2002) (holding that a state's act of removing a suit from state to federal court waives its Eleventh Amendment immunity).   Accordingly, Defendants' Motion to Dismiss is denied with regard to Plaintiff's state law claims brought against the defendants in their official capacities.

      C.      Standard Under Rule 12(b)(6)

Defendants also move to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).   Rule  12(b)(6) authorizes a defendant to move to dismiss for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6).   Under the demanding strictures of a Rule 12(b)(6) motion, "[t]he plaintiff's complaint is to be construed in a light most favorable to the plaintiff, and the allegations contained therein are to be taken as true." Oppenheimer v. Prudential Sec., Inc., 94 F.3d 189, 194 (5th Cir. 1996) (citing Mitchell v. McBryde, 944 F.2d 229, 230 (5th Cir. 1991)).   Dismissal is appropriate only if, the "[f]actual allegations [are not] enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Moreover, in light of Federal Rule of Civil Procedure 8(a)(2), "[s]pecific facts are not necessary; the [factual allegations] need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Twombly, 550 U.S. at 555).   Even so, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action will not do." Twombly, 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

In Ashcroft v. Iqbal, the Supreme Court expounded upon the Twombly standard, reasoning that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show [n]'-'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Nevertheless, when considering a 12(b)(6) motion to dismiss, the Court's task is limited to deciding whether the plaintiff is entitled to offer evidence in support of his or her claims, not whether the plaintiff will eventually prevail. Twombly, 550 U.S. at 563 n. 8 (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)); see also Jones v. Greninger, 188 F.3d 322, 324 (5th Cir. 1999).

1.    *Federal Claims for Money Against Defendants in their Official Capacities*

Plaintiff raises federal claims against the defendants in their official capacities for monetary damages pursuant to 42 U.S.C. § 1983. Section 1983 provides a private right of action for damages to individuals who are deprived of "any rights, privileges, or immunities" protected by the Constitution or federal law by any "person" acting under the color of state law. 42 U.S.C. § 1983. The Supreme Court has held that "neither a state or persons acting in their official capacities are 'persons' under § 1983," though state officials in their official capacities, when sued for injunctive

13

relief, are "persons" under § 1983.  Will v. Michigan State Dep't of Police, 491 U.S. 58, 71 & n. 10 (1989); see also Lapides v. Bd. of Regents of the Univ. Sys. of Georgia, 535 U.S. 613, 617 (2002). Thus, Plaintiff's federal claims brought against the defendants in their official capacities for monetary relief are invalid.  Accordingly, Defendants' Motion to Dismiss is granted with regard to Plaintiff's federal claims brought against the defendants in their official capacities for monetary damages.

D.      Standard Under Rule 56

The parties have also filed motions for summary judgment.  A court will, on a motion for summary judgment, render judgment if the evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Eason v. Thaler, 73 F.3d 1322, 1325 (5th Cir. 1996); Int'l Shortstop, Inc. v. Rally's Inc., 939 F.2d 1257, 1263 (5th Cir. 1991), cert. denied, 502 U.S. 1059 (1992).  When a motion for summary judgment is made and supported, an adverse party may not rest upon mere allegations or denials but must set forth specific facts showing there is a genuine issue for trial.  Ray v. Tandem Computers, Inc., 63 F.3d 429, 433 (5th Cir. 1995);  FED. R. CIV. P. 56.[4]

Both movants and non-movants bear burdens of proof in the summary judgment process. Celotex Corp. v. Catrett, 477 U.S. 317 (1986).  The movant with the burden of proof at trial must establish every essential element of its claim or affirmative defense.  Id. at 322.  In so doing, the

---

[4]Effective December 1, 2010, Rule 56 was amended. Although there is a slight language change and a change in the designation of subsections, the legal standard remains the same. See FED. R. CIV. P. 56(a) (eff. Dec.1, 2010) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").

moving party without the burden of proof need only point to the absence of evidence on an essential element of the non-movant's claims or affirmative defenses.  Id. at 323-24.  At that point, the burden shifts to the non-moving party to "produce evidence in support of its claims or affirmative defenses . . . designating specific facts showing that there is a genuine issue for trial."  Id. at 324.  The non-moving party must produce "specific facts" showing a genuine issue for trial, not mere general allegations.  Tubacex v. M/V Risan, 45 F.3d 951, 954 (5th Cir. 1995).

In deciding whether to grant summary judgment, the Court should view the evidence in the light most favorable to the party opposing summary judgment and indulge all reasonable inferences in favor of that party.  The Fifth Circuit has concluded "[t]he standard of review is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon the evidence before the court."  James v. Sadler, 909 F.2d 834, 837 (5th Cir. 1990) (citing Matsushita, 475 U.S. at 586)).  To the extent facts are undisputed, a Court may resolve the case as a matter of law.  Blackwell v. Barton, 34 F.3d 298, 301 (5th Cir. 1994).

1.    *Qualified Immunity*

Defendants assert their entitlement to qualified immunity with regard to Plaintiff's federal claims brought against them in their individual capacities for monetary relief.  The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Immunity in this sense means immunity from suit, not merely from liability.  Jackson v. City of Beaumont, 958 F.2d 616 (5th Cir. 1992).  "Qualified immunity is designed to shield from civil

liability all but the plainly incompetent or those who violate the law." Brady v. Fort Bend Cnty., 58 F.3d 173, 174 (5th Cir. 1995).

To rebut the qualified immunity defense, the plaintiff must show: (1) that he has alleged a violation of a clearly established constitutional right, and (2) that the defendants conduct was objectively unreasonable in light of clearly established law at the time of the incident. Waltman v. Payne, 535 F.3d 342, 346 (5th Cir. 2008) (footnote omitted).  To negate a defense of qualified immunity and avoid summary judgment, the plaintiff need not present "absolute proof," but must offer more than "mere allegations." Reese v. Anderson, 926 F.2d 494, 499 (5th Cir. 1991).

For several years, the Supreme Court required that the first of these criteria-whether plaintiffs' facts allege a constitutional violation-must be decided at the outset. Saucier v. Katz, 533 U.S. 194, 201 (2001).  Recently, however, the Court reversed course, holding that lower courts "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson v. Callahan, 555 U.S. 223, 236 (2009).  As explained below, Defendants sued in their individual capacities for monetary damages are entitled to qualified immunity.

### a.  *First Amendment Claims*

Plaintiff complains the defendants violated his right to religious freedom by:  (1) mistakenly transferring Plaintiff to the Allred Unit, a non-Native American unit, after he was disciplined; (2) refusing to transfer him to a Native American unit due to the Religious Transfer Policy after he was transferred to the Allred Unit; and (3) not providing him accommodations to practice his faith while confined at the Allred Unit.

The Constitution requires an inmate be given a reasonable opportunity to exercise the religious freedoms guaranteed by the First and Fourteenth Amendments.  Cruz v. Beto, 405 U.S. 319, 322 (1972).  An inmate retains his First Amendment right to the free exercise of his religion, subject to reasonable restrictions and limitations necessitated by penological goals. Turner v. Safley, 482 U.S. 78, 89-91 (1987); O'Lone v. Estate of Shabazz, 482 U.S. 342, 349-50 (1987).  Prison officials have a duty to accommodate an inmate's religious beliefs unless there is a legitimate penological interest which prevents such accommodation.  Eason v. Thaler, 14 F.3d 8, 10 (5th Cir. 1994).  If a prison regulation impinges on an inmate's First Amendment rights, the regulation is valid only if it is reasonably related to a legitimate penological interest.  Turner, 482 U.S. at 87.  If the court is reviewing action taken by prison officials rather than a regulation, the same standard is applicable to determine whether the prison official's act is constitutionally permissible.  Jackson v. Cain, 864 F.2d 1235, 1248 (5th Cir. 1989).

Personal involvement is an essential element of a civil rights cause of action.  Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983).  Prison officials "cannot be automatically held liable for the errors of their subordinates." Adames v. Perez, 331 F.3d 508, 513 (5th Cir. 2003).  A supervisor may be liable for failure to supervise or train a subordinate employee if: "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference."  Goodman v. Harris Cnty., 571 F.3d 388, 395 (5th Cir. 2009) (quoting Smith v. Brenoettsy, 158 F.3d 908, 911–12 (5th Cir. 1998)).

The Fifth Circuit has held that "'deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."

17

Porter v. Epps, 659 F.3d 440, 446-47 (5th Cir. 2011) (quoting Connick v. Thompson, ––– U.S. –––,

–––, 131 S. Ct. 1350, 1360 (2011)).   To establish that a state actor disregarded a known or obvious

consequence of his actions, there must be "actual or constructive notice" that "a particular omission

in their training program causes ... employees to violate citizens' constitutional rights" and the actor

nevertheless "choose[s] to retain that program."  Connick, 131 S. Ct. at 1360 (citing Board of

Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 407 (1997)).  With respect to a failure-to-train or

failure-to-supervise claim, "[a] pattern of similar constitutional violations by untrained employees

is ordinarily necessary to demonstrate deliberate indifference."  Porter, 659 F.3d at 447 (citation

omitted); see also Thompson v. Upshur Cnty., 245 F.3d 447, 459 (5th Cir. 2001) ("Proof of more

than a single instance of the lack of training or supervision causing a violation of constitutional rights

is normally required before such lack of training or supervision constitutes deliberate indifference.").

Plaintiff's allegations and summary-judgment evidence are insufficient to establish the

requisite personal involvement on the part of the defendants.  As Defendants point out, Plaintiff

alleges his improper transfer was the result of a TDCJ employee not using diligence to assign him

to an appropriate unit.  The summary judgment evidence shows none of the defendants participated

in his transfer or that they were deliberately indifferent with respect to their training and supervision.

Alternatively, Plaintiff has pointed to no cases that render the defendants' actions with regard

to Plaintiff's First Amendment claims unreasonable in light of clearly established federal law.

Defendants acted objectively reasonable as (1) Defendants had no personal involvement in housing

Plaintiff at non-Native American units or denying his request for a transfer to a designated Native

American unit, (2) Defendants had no personal involvement in the specific accommodations

provided to Plaintiff at the Allred Unit, and (3) TDCJ officials transferred Plaintiff to a designated

Native American unit upon further review of his records.  Based on the summary judgment record before it, the Court finds Defendants are entitled to qualified immunity with regard to Plaintiff's First Amendment claim.

b.    <em>Equal Protection</em>

Plaintiff also complains he was denied equal protection because non-Christian and non-Muslim inmates are affected differently than inmates of other faiths, particularly Native American inmates.  To maintain his claim for violation of equal protection under the Fourteenth Amendment, Plaintiff must allege and prove purposeful discrimination by Defendants resulting in a discriminatory effect among persons similarly situated.  See Muhammad v. Lynaugh, 966 F.2d 901, 903 (5th Cir. 1992). The Fourteenth Amendment does not demand that every religious sect or group within a prison, however few in numbers, must have identical prison facilities or personnel.  Freeman v. Tex. Dep't Criminal Justice, 369 F.3d 854, 862 (5th Cir. 2004).  Rather, prison administrators must provide inmates with reasonable opportunities to exercise their religious freedoms.  Id. at 863.

The fact that TDCJ's policies adversely impact Plaintiff and his religious practices does not, by itself, establish a Fourteenth Amendment violation.  "[D]isparate impact, alone, cannot suffice to state an Equal Protection violation; otherwise, any law could be challenged on Equal Protection grounds by whomever it has negatively impacted."  Johnson v. Rodriguez, 110 F.3d 299, 306 (5th Cir. 1997) (emphasis in original).  To maintain an equal protection claim, Plaintiff must allege and prove he received treatment different from that received by similarly situated individuals and the unequal treatment stemmed from a discriminatory intent.  Taylor v. Johnson, 257 F.3d 470, 472 (5th Cir. 2001).  Discriminatory purpose in an equal protection context implies the decision maker

19

selected a particular course of action at least in part because of, and not simply in spite of, the adverse impact it would have on an identifiable group.  Johnson v. Rodriguez, 110 F.3d at 306.

Plaintiff does not present any summary judgment evidence that his transfer to the Allred Unit, the subsequent refusal to transfer him to a Native American unit, or the accommodations made available to him at the Allred Unit were intended to discriminate against him due to his religion. In addition, as explained above, the defendants he sues lack the requisite personal involvement to overcome their qualified immunity protection.

c.    <em>Due Process</em>

Plaintiff also claims he was denied due process.  However, Plaintiff has not alleged sufficient facts showing his transfer to a non-Native American unit or the refusal to transfer him to a Native American unit imposed hardships atypical of ordinary prison life, and has further failed to show a liberty interest protected by the Due Process Clause.  Sandin v. Conner, 515 U.S. 472, 483–84 (1995).  Prior to Sandin, courts examined state laws to determine whether a protected liberty interest was created by mandatory language in the statute.  In Sandin, the Supreme Court disapproved of previous cases which "shift[ed] the focus of the liberty interest inquiry to one based on the language of a particular regulation, and not the deprivation."  515 U.S. at 481.  The Court concluded that such an inquiry "encouraged prisoners to comb regulations in search of mandatory language on which to base entitlements to various state-conferred privileges."  Id.  The Court recognized that states may create liberty interests which are protected by the Due Process Clause.  However, the Court held that these interests are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of

20

its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484. (citations omitted).

Inmates have no justifiable expectation that they will be incarcerated in any particular prison within a state. Olim v. Wakinekona, 461 U.S. 238 (1983). Administrative transfers of prisoners to another prison, the conditions of which may be substantially less favorable, do not constitute deprivations of Fourteenth Amendment liberty requiring a due process hearing. Meachum v. Fano, 427 U.S. 215 (1976). As such, Plaintiff's claims do not implicate due process concerns.

Moreover, Plaintiff admits there are processes available to address his unit assignment. He blames others for not properly processing his request and grievances. However, prisoners do not have a federally protected liberty interest in having their complaints resolved to their satisfaction. Geiger v. Jowers, 404 F.3d 371, 373-74 (5th Cir. 2005). Additionally, Plaintiff has failed to adequately demonstrate that Defendants were personally involved in the processing of his request and grievances. Accordingly, Defendants are entitled to qualified immunity.

    E.    Counterclaim for Attorney Fees

Defendants include in their answer a "counterclaim" for attorney's fees and costs pursuant to 42 U.S.C. § 1988. Neither party moved for summary judgment on the attorney's fee issue. The Court nonetheless addresses this issue sua sponte in the interest of judicial economy on the basis of the extensive record presented by the parties and the rulings set forth herein.

A federal court, "in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs" of actions seeking to vindicate civil rights. 42 U.S.C. § 1988. "This section was enacted, in large part, to assure effective access to the judicial process for persons with civil rights grievances; such policy considerations are generally absent for prevailing civil rights

defendants." <u>Vanderhoff v. Pacheco</u>, 344 F. App'x 22, 28 (5th Cir. 2009) (citing <u>Dean v. Riser</u>, 240 F.3d 505, 507 (5th Cir. 2001)).   Thus, while prevailing plaintiffs are generally awarded attorney's fees in all but special circumstances, prevailing defendants are entitled to attorney's fees under Section 1988 "only 'upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation.'" <u>Dean</u>, 240 F.3d at 508 (quoting <u>Christiansburg Garment Co. v. EEOC</u>, 434 U.S. 412, 421 (1978)).   In the Fifth Circuit, the reasonableness of a plaintiff's claims must be assessed as of the time of filing suit.   <u>See</u> <u>Holloway v. Walker</u>, 784 F.2d 1294, 1296 (5th Cir. 1986).   As Plaintiff's claims were not frivolous, unreasonable, or without foundation at the time he filed his original complaint or amended complaint, Defendants' "counterclaim" for attorney's fees is dismissed.   All parties shall bear their own costs and attorney's fees incurred herein to date.

      F.     <u>Supplemental Jurisdiction</u>

      As mentioned above, Plaintiff raises state law claims in addition to his federal claims. Defendants incorrectly argue the Court lacks jurisdiction over the state law claims because Plaintiff has failed to assert a valid federal claim.   They cite <u>Bass v. Parkwood Hosp.</u>, 180 F.3d 234, 246 (5th Cir. 1999) for this proposition.   However, the <u>Bass</u> court actually held the fact that no federal question remains before the district court does <u>not</u> divest the court of jurisdiction.   Instead, the district court must exercise its discretion whether to exercise supplemental jurisdiction over the state law claims.   Pursuant to 28 U.S.C. § 1367, a district court generally has supplemental jurisdiction over claims that are so related to claims in the action which it has original jurisdiction that they form part of the same case or controversy.   If all the federal law claims are dismissed prior to trial, a district court should dismiss the state law claims.   <u>Robertson v. Neuromedical Center</u>, 161 F.3d 292, 296 (5th Cir. 1998).   Because the only remaining claims in this case are state law claims, the Court

declines to exercise its supplemental jurisdiction. As this case was removed to this Court, Plaintiff's state law claims are remanded to state court.

## V.  CONCLUSION

Plaintiff's release from prison renders moot his federal claims for injunctive and declaratory relief. Plaintiff is not allowed to amend his complaint in order to avoid dismissal of these claims. Plaintiff's federal claims for monetary damages brought against Defendants in their official capacities are invalid, and Defendants are protected from Plaintiff's remaining federal claims for monetary damages by qualified immunity. As Plaintiff's claims were not frivolous, unreasonable, or without foundation at the time he filed his original or amended complaint, Defendants' "counterclaim" for attorney's fees is dismissed. The only claims remaining are Plaintiff's state law claims over which this Court declines to exercise supplemental jurisdiction. Accordingly, Plaintiff's state law claims are remanded to state court.

It is therefore **ORDERED** that the Motion for Reconsideration to Amend Complaint, filed by Plaintiff on September 4, 2014, is **DENIED**.

It is further **ORDERED** that the Motion for Reconsideration to Intervene, purportedly filed by Offenders Randy Boykin and Ronald Walton on September 4, 2014, is **DENIED**.

It is further **ORDERED** that the Motion to Dismiss for Lack of Subject Matter Jurisdiction and Motion to Dismiss for Failure to State a Claim, filed by Defendants on July 15, 2014, is **GRANTED IN PART AND DENIED IN PART**. Specifically, the motion is granted to the extent Plaintiff's federal claims for injunctive and declaratory relief are **DISMISSED WITHOUT PREJUDICE** as moot, and Plaintiff's federal claims for monetary damages brought against

Defendants in their official capacities are **DISMISSED WITH PREJUDICE** for failure to state a claim.

It is further **ORDERED** that the Motion for Summary Judgment, filed by Defendants on February 3, 2014, is **GRANTED IN PART**. Specifically, summary judgment is granted with respect to Plaintiff's federal claims brought against Defendants in their individual capacities for monetary damages, because Defendants are protected by qualified immunity.

It is further **ORDERED** that the Motion for Summary Judgment, filed by Plaintiff on February 27, 2014, is **DENIED**.

It is further **ORDERED** that Defendants' "counterclaim" for attorney's fees and costs pursuant to 42 U.S.C. § 1988 is **DISMISSED**.

It is further **ORDERED** that the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

It is finally **ORDERED** that Plaintiff's state law claims are **REMANDED** to the 126th Judicial District Court of Travis County, Texas.

**SIGNED** on September 12, 2014.


_____
MARK LANE
UNITED STATES MAGISTRATE JUDGE